### BRAINARD *v.* PAW PAW CO-OPERATIVE ASSOCIATION.

1. SALES—EVIDENCE—DIRECTED VERDICT.
   In an action by a basket manufacturing company for a balance claimed to be due for baskets shipped to defendant under a written contract, where the testimony as to the price to be paid for said baskets was contradictory, the trial judge properly refused to direct a verdict in favor of plaintiff.[1]

2. SAME — WHERE CONTRACT INCOMPLETE ORAL TESTIMONY ADMISSIBLE.
   Where a written contract was incomplete, oral testimony to make its meaning clear was admissible.[2]

3. SAME—ESTOPPEL.
   In view of the testimony of both parties that it was agreed that the price to be paid by defendants for baskets shipped to it by plaintiff should be fixed in the spring, plaintiff's action in putting a certain price on the invoices and claiming said price in letters written to defendant during the winter, would not estop it from disputing plaintiff's claim that the price named was the one to be charged.[3]

[1]Sales, 35 Cyc. p. 574; [2]Id., 35 Cyc. p. 567; [3]Estoppel, 21 C. J. § 223.

Error to Van Buren; Des Voignes (L. Burget), J. Submitted April 24, 1924.    (Docket No. 56.)    Decided October 6, 1924.

Assumpsit by Frank B. Brainard and another, copartners as The Brainard Basket Manufacturing Company, against the Paw Paw Co-operative Association on a contract for the sale of certain baskets. Judgment for defendant. Plaintiffs bring error. Affirmed.

*Robert L. Campbell* (*Harry C. Howard*, of counsel), for appellants.

*David Anderson*, for appellee.

MOORE, J.    The plaintiff is a manufacturer of fruit baskets at Brocton, New York.    The defendant is a co-operative association of fruit growers living in the vicinity of Paw Paw, Michigan.    This suit was brought to recover a balance claimed to be due for baskets shipped to defendant amounting to $1,603.88 and interest.    At the close of all the testimony counsel for the plaintiff asked for a directed verdict for that amount.    Defendant denied that there was anything due.    The trial judge submitted the case to the jury in a charge covering more than 12 pages of the printed record.    The jury returned a verdict in favor of the defendant.    The case is brought into this court by writ of error.

The assignments of error may be discussed in three groups:

*First.* Did the judge err in not directing a verdict as requested by the plaintiff?

*Second.* Did he err in permitting oral testimony of the transaction when there were two written contracts between the parties? and

*Third.* Did he err in his charge to the jury?

Before these questions can be answered a statement of facts is necessary.

In December, 1920, Doctor F. J. Brainard representing the plaintiff came to Paw Paw and after considerable negotiations a contract was entered into reading as follows:

"BASKET ORDER AND DELIVERY BOOK
"BRAINARD BASKET MFG. CO.
"Order accepted at Brocton, N. Y. Dec. 18, 1920.
"I, Paw Paw Co-op. Ass. of Paw Paw hereby order and agree to take the following baskets subject to conditions stated below.    *    *    *
"200,000 12 Quart Baskets complete at $........ per M.
"All baskets are to be paid for in full at the office of The Brainard Basket Mfg. Co. or to any of their authorized agents on or before Nov. 1, 192.....    All deliveries are contingent upon strikes, fires, breakage of machinery and other circumstances beyond our control.    This order not subject to cancellation.  ·  Agreed that Brainard Basket Company is to protect buyer on price.
"PAW PAW CO-OP. ASS'N.
L. T. CHASE, Mgr.
"THE BRAINARD BASKET MFG. CO.
Dr. C."

The doctor indorsed upon his copy of the contract the following:

"(Over)
"We are to take care of Paw Paw Co-op. on the balance of this order and they are to give us balance of order as soon as they see their grapes are'nt frozen.
"$100 dep. cash down per 1,000 upon delivery of each car till actual price later determined."

This writing was not signed by any of the parties and was not indorsed on the copy left with the defendant.    As to the making of this contract the claim of defendant was succinctly stated by the testimony

of one of the directors of the defendant, who was present when it was made, as follows:

"I was present when the order of December 18, 1920, was given to the Doctor. I will tell the jury what was said at that time about the price on the 200,000 12-quart baskets. Dr. Brainard thought that the price of baskets was going to be a hundred to a hundred twenty-five dollars, and he wanted our basket business. I made the suggestion that if he would guarantee prices that we had no objection to giving him the order. He said: 'we will put that in our contract to protect you on price,' and I think it was done. We were to remit $100 on a thousand for the baskets shipped under this contract, and the price was to be established later, the price being from any legitimate basket factory in the belt. If, after we remitted to the plaintiffs the hundred dollars a thousand, the price was determined to be less than $100 a thousand, they were to rebate, and if it was more we had to remit."

Dr. Brainard was sworn as a witness on the trial, and on his cross-examination testified in part:

"The contract read that I was to protect them on the price and there was nothing said as to limit as to date. It was discussed at this meeting as to how much they were to advance us on each thousand and it was agreed that they were to advance us $100 on each thousand. I claim this was simply an advance against the ultimate price to be decided upon in the spring. If the market went down in the spring, we would advance them the difference in price."

Shipments of baskets began during the winter and at least eight car loads were shipped in all. The first four invoices had a memorandum reading:

"Terms: Partial payment of $100 per thousand baskets against purchase price ten days from shipment, balance to be paid when price is agreed upon."

The other invoices had no such memorandum. Some correspondence was had between the parties. In a

letter of January 13, 1921, written by Frank Brainard appears the following:

"As my brother explained to me, by letter, you people were to advance us $100 per thousand baskets upon receipt of invoice and bill lading and upon his return, early in the spring, you and he were to agree upon the price, discounts and freight."

On the 18th of January, Dr. Brainard wrote from California on behalf of his company, in which letter appears the following:

"I feel that the quality of the baskets shipped will please you very much and hope that you will arrange to remit $100 per 1,000 baskets delivered at Paw Paw, within 10 days of receipt of each car. This I believe was our understanding and in addition, that we were to protect you on the price, quality of baskets considered; and that I was to stop off on my way East next spring and settle with you on a definite price."

Several remittances were made by the defendant at the rate of $100 for each 1,000 baskets. On his way back to California the Doctor stopped at Paw Paw and a paper reading as follows was signed:

"Order accepted at Brockton, N. Y.
April 11, 1921.

"I, Paw Paw Co-op. Assoc. of Paw Paw, Mich., hereby order and agree to take when notified the following baskets subject to conditions stated below:

".......... 2-quart Baskets complete at $....... per M.

"100,000 4-quart Baskets at $39.50 per M. delivered without handles.

"300,000 12-quart Baskets complete at $100 per M. delivered.

"All baskets are to be paid for in full at the office of The Brainard Basket Mfg. Co. or to any of their authorized agents on............... All deliveries are contingent upon strikes, fires, breakage of machinery and other circumstances beyond our control. This order not subject to cancellation.

"Above prices net cash Brainard Bas. Mfg. Co. to

supply the Assoc's. entire basket requirements and to receive the benefit of a later raise in price if any.

"F. BRAINARD,
"THE BRAINARD BASKET MFG. CO.
"PAW PAW CO-OP. ASS'N.
"L. T. CHASE, Mgr."

It will be noticed that no reference is made in the last named contract to the first contract. It was the claim of the plaintiff that the first contract was merged in the second, and that it definitely fixed the price of all the baskets which were delivered, except the last two car loads, which will be mentioned later, and Doctor Brainard testified that such was the fact.

On the other hand it is claimed by the defendant that this was an entirely new contract, which did not merge the first contract, and did not fix the price to be paid for the baskets shipped under the first contract. It is also the claim of the defendant that the last named contract was signed hurriedly in an automobile, and to enable Dr. Brainard to catch an approaching train, and that it was agreed that it would be changed later to conform to some talk had between the manager and defendant company, and did not represent the contract as actually made. This claim was denied by Dr. Brainard, though he testified that defendant was to take no more baskets than was needed by it during 1921. There were about 110,000 baskets shipped, which defendant claims were to be paid for according to the terms of the first contract, while plaintiff claims they should be paid for at the rate of $100 for each 1,000 baskets.

Shortly after the second contract was executed there was a heavy frost in the Paw Paw fruit section, followed by a second frost in April. These frosts destroyed most of the grapes. In June, 1921, Mr. Chase, the manager of the defendant company, visited Brocton to talk over the situation. It is his claim that he saw Dr. Brainard and his brother and an

arrangement was made which authorized a settlement for the baskets on the basis of $85 for 1,000 baskets. This is denied by the Brainards, who insist that the agreement to sell at $85 per 1,000 baskets was to apply only to future shipments, and that the baskets already sent should be settled for on the basis of $100 for 1,000 baskets. Two car loads of baskets were shipped and billed at $85 after this visit.

On July 19, 1921, Mr. Chase sent to the plaintiff company a statement showing his claim of how the account stood, and inclosed a check for $1,049.04, and requested the shipment of a car to Miller's siding. In this statement he had figured all the baskets received at the rate of $85 for 1,000 baskets, and his check upon that basis overpaid what was then due by $53.65. Upon the receipt of this letter and statement plaintiffs protested it was wrong and insisted there was due them a balance of $1,603.88, and declined to ship the baskets ordered until the disagreement between the parties was settled. The parties were not able to agree and this suit followed.

The statement of the claims of the parties which we have made we think makes it very clear the court did not err in declining to direct a verdict as requested by the plaintiff. What we have stated also shows that the first contract was incomplete and required oral testimony, not to contradict it, but to make its meaning clear.

It has already appeared that the second contract did not refer to the first one and the claim of the plaintiff that the first contract was merged in the second one required oral testimony to establish it. Defendant claimed this contract did not take the place of the first one, but was in addition to it. To establish the truth of either of these claims required oral testimony.

The complaints in the main about the charge of the

court are disposed of by what we have said about the admission of the oral testimony.

It is claimed the defendant is estopped from claiming it was to settle upon any other basis than $100 for 1,000 baskets because of what was said in the quotations we have made from the letter of Dr. Brainard and his brother and from the first four invoices, and the remittances made on the basis of $100 for each 1,000 baskets. It may be difficult to see how defendant could be estopped by the acts of the plaintiff, but surely in view of the testimony of all the parties that the price was not to be fixed until the spring of 1921, these acts could not create estoppel.

The number of baskets all told which were shipped amounted to but little more than half of those ordered in the first contract.

The trial was carefully conducted and the diverse theories of the parties were fairly submitted to the jury. The testimony was very conflicting. The jury evidently accepted the version of the defendant. We find no reversible error.

The judgment is affirmed, with costs to the appellee.

CLARK, C. J., and MCDONALD, BIRD, SHARPE, STEERE, FELLOWS, and WIEST, JJ., concurred.